**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
|     **ANITA IVISON,** | § | **CASE NO. 13-37732-H5-7** |
|     **DEBTOR** | § |     **(Chapter 7)** |
| _____ | § | |
| **ANITA IVISON** | § | |
|     **Plaintiff** | § | |
| **v.** | § | **Adversary No. _____** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **COMMISSIONER OF INTERNAL REVENUE** | § | |
|     **Defendant** | § | |

## ORIGINAL COMPLAINT

Anita Ivison, Debtor (hereinafter, "Plaintiff" or "Anita") in the above-captioned case, files this Original Complaint, and in support thereof, respectfully shows:

### I.  Parties

1.    Plaintiff[1] is Anita Kanzler, f/k/a Anita Ivison, a/k/a Anita Evelyn Ivison, and debtor in this Chapter 7 proceeding.

2.    Defendant is the Commissioner of Internal Revenue, United States of America, and may be served with summons in accordance with Fed. R. Civ. P. 4(i)(1) Bankr. R. 7004(b)(4) and (5).

### II.  Jurisdiction and Venue

3.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1346(a), 28 U.S.C. §157,

---

[1]It is anticipated that James Ivison ("James") and Specialized Hydraulic Services, Inc. ("SHS") will join Anita as party plaintiffs.  James and SHS have pending Chapter 7 asset cases commenced after Anita's case.  James and SHS are instituting similar adversary proceedings, and consolidation of all three adversary cases will be sought in the interest of judicial efficiency and economy.

and 11 U.S.C. §505(a).  This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), (I), (K) and (O).  Venue is proper in this district pursuant to 28 U.S.C. §1391(e).

### III.  Procedural History

4.      The Debtor commenced her Chapter 7 case on December 17, 2013.

5.      Janet S. Casciato-Northrup was duly appointed as the Chapter 7 trustee.

6.      The case was administered by the Trustee as a no-asset case, and the Debtor received her discharge in March, 2014.

7.      The case was fully administered and closed on October 22, 2014.

8.      The Debtor filed an emergency motion to reopen her bankruptcy case and reinstate the automatic stay pursuant to 11 U.S.C. §362(a), and this Court entered an order reopening the case and reinstating the automatic stay on December 22, 2014.

### IV.  Other Relevant Factual Background: Related Chapter 7 Cases

9.      As of the commencement of her Chapter 7 case, Anita owned a 50% interest in  a corporation, Specialized Hydraulic Services, Inc. ("SHS").  The remaining 50% interest was owned by the Debtor's former husband, James Ivison ("James").

10.     James commenced a Chapter 7 bankruptcy case on or about December 19, 2013 (Case No. 13-37740) and SHS commenced a Chapter 7 bankruptcy case on January 24, 2014 (Case No. 14-30487).

11.     James' Chapter 7 case is pending before the Honorable Letitia Z. Paul and SHS' Chapter 7 case is pending before the Honorable David Jones.  Both cases are being administered as asset cases by the duly-appointed Chapter 7 trustee therein, Randy Williams.

### V.  Relevant Facts Relating to Tax Determination and Injunctive Relief

12.     During the spring and summer of 2013 and prior to the commencement of all of the Chapter 7 cases, the Internal Revenue Service made significant tax assessments against

James, Anita and SHS (collectively, the "Debtors") for income, payroll taxes and civil penalties.

13.     The tax assessments were a major contributing factor to the institution of each of the Debtors' Chapter 7 bankruptcy cases.

14.     The Debtors believe that the tax assessments are grossly overstated.  The subject taxes have never been adjudicated previously.

15.     The Debtors additionally believe that the overstated assessments may have originated in part, due to negligently inaccurate preparation, filing and handling of tax matters by a former employee of SHS, Rose Paradez ("Rose") who was an enrolled tax preparer.  The Debtors have discovered evidence indicating that Rose was embezzling funds from SHS, which incorporated the filing of inaccurate tax returns to conceal the defalcation.  In addition, a review of SHS's computers, and in particular, Rose's computer, revealed that she was maintaining a dual set of company accounting records, which were materially different from one another.

16.     During the early part of 2013, the IRS conducted audit examinations of SHS, James and Anita, and a related entity, Specialized Pipe Services, Inc. ("SPS") for tax years from 2006 through 2011.  Rose handled all of the audit examinations and dealt directly with the IRS on behalf of SHS, SPS, James and Anita.

17.     Both SHS and SPS are Subchapter "S" corporations, so the net income and losses from the corporations flow through to their sole shareholders: James and Anita.

18.     The income tax examination changes made by the IRS to James and Anita's tax returns are inconsistent with the changes made by the IRS to SHS and SPS.  Further, the changes made to SHS' and SPS's tax returns were predicated on incomplete and erroneous records created by Rose.  Many of the records were "missing" during the audit, but discovered subsequent to the termination of Rose's employment.

19.     By way of example of the inconsistencies, the IRS increased the net income of SHS for the tax year of 2011 to $547,689.47, a number believed to be significantly overstated.  For the same tax year of 2011, the IRS decreased a net loss of SPS from $723,882.00 to

$659,080.00.  Because both SHS and SPS are "S" corporations, the income and loss flow through to James and Anita's personal tax return.  Accordingly, James and Anita should have had an aggregate net <u>loss</u> flow through to their personal tax return of $111,391 (the difference between the income of $547,689 and the loss of $659,080), assuming arguendo that the tax examination changes were correct, which is disputed.  However, in recording the examination changes to James and Anita's personal tax return, the IRS completely disregarded the net loss flow-through from SPS of $659,080, and instead increased their taxable income by $717,561.  Had the IRS taken into account the $659,080 flow-through loss from SPS, which the <u>IRS</u> had determined from its own audit, then James and Anita's taxable income would have only increased by $58,481.

20.     The IRS has filed tax liens against James and Anita, in the aggregate total of approximately $2.5 million dollars, stemming primarily from selective flow-through amounts from SHS and SPS.  For the 2011 tax year discussed in the preceding paragraph 18, the IRS filed a tax lien in the approximate amount of $343,872.  Assuming the IRS' audit numbers are correct, which is highly unlikely, the amount of additional tax would have only been around $20,000 rather than $343,872.

21.     The IRS has taken an aggressive posture toward the collection of these tax assessments against the Ivisons.  In spite of the fact that Anita had recently submitted an offer in compromise to the IRS (the "OIC"), in a good-faith effort to resolve the tax liabilities assessed against her, the IRS levied Anita's bank account and wages, leaving her with insufficient funds to support her two minor children.[2]

22.     Anita sought emergency relief in this Court, which after notice and hearing, reopened her bankruptcy case to institute this adversary proceeding, and reinstated the

---

[2]The IRS additionally involved the Department of Justice, based upon an incorrect contention by the IRS agent that Anita had failed to comply with a summons last fall.  In actuality, Anita fully complied with the summons; however the IRS agent failed to appear at the scheduled date and place.  The requested data was left with another IRS agent after calling and waiting for an hour for the agent to appear.  An attorney with the DOJ then threatened prosecution against Anita for "failure to fully comply" although no specific alleged non-compliance was identified.

automatic stay pending adjudication of the tax issues.

23.     James has recently received final notices of intent to levy from the IRS also. Presumably the IRS will employ heavy-handed collection efforts against James as they have against Anita.

24.     The notices of levy issued against Anita and James reflect amounts inconsistent with the proof of claim filed by the IRS in SHS' bankruptcy case, and do not reflect all of the payments known to have been made to the IRS for the tax liabilities at issue, particularly with regard to payroll taxes.

25.     The IRS has assessed civil penalties for trust fund payroll taxes pursuant to 28 U.S.C. §6672 against James and Anita for payroll tax liabilities of SHS.  Not only are the assessments believed to be incorrect, but SHS is primarily liable for these taxes, which may be paid in the due course of administration of its bankruptcy case.

26.     There is a distinct possibility that some or all of the taxes sought to be collected by the IRS may be satisfied through the administration of James' and SHS' respective bankruptcy cases.  Both cases are asset cases and the trustee therein has sold assets which could be liquidated and holds the proceeds therefrom.  In addition, the trustee has retained special counsel to investigate and potentially prosecute claims on behalf of SHS, which could result in a monetary recovery to SHS.  Upon information and belief, such a recovery could be sufficient to satisfy the tax obligations of the Debtors.

27.     The Debtors jointly seek a determination under 11 U.S.C. §505(a)(1), and request injunctive relief afforded by the automatic stay of 11 U.S.C. §362(a) to prevent collection action by the IRS pending a just adjudication of the actual amounts of the subject taxes and all additions thereon, and the amount for which James and Anita are individually liable. James and Anita additionally seek a determination of the amount of the subject taxes, penalties and interest thereon which is dischargeable in their Chapter 7 cases.

## VI.  CAUSES OF ACTION

### Count 1: Tax Determination Pursuant to 11 U.S.C. §505

28.     11 U.S.C. §505(a) provides in relevant part that the bankruptcy court may " . . . determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

29.     James and Anita seek determination of their respective prepetition federal income tax liability and civil penalty liability for the tax years inclusive of 2006 through 2013, including all penalties, interest and additions thereto.  James and Anita further seek a determination of the dischargeability of such taxes in their respective Chapter 7 bankruptcy cases.

30.     SHS seeks a determination of its prepetition federal income tax liability, miscellaneous penalty and payroll tax liabilities for the tax years inclusive of 2007 through 2014, including all penalties, interest and additions thereto.

### Count 2: Temporary Injunctive Relief Pursuant to 11 U.S.C. §362(a)

31.     This Court has previously reinstated the automatic stay provisions of 11 U.S.C. §362(a) with respect to the IRS and Anita.  The automatic stay should be reinstated against the IRS with respect to James also, pending a determination by this Court pursuant to 11 U.S.C. §505(a) of the actual amounts of tax liability for the subject time periods, and the appropriate responsible party.  Pursuant to 28 U.S.C. §6672(d), Anita and James have a right of contribution from SHS which is primarily liable for the underlying payroll tax liabilities.

32.     Upon information and belief, the subject tax liabilities are significantly less than the amounts assessed by the IRS, and may be satisfied by recoveries in SHS' bankruptcy estate, and/or James' bankruptcy estate.

33.     Enforcement of the assessments should be stayed pending an adjudication of the

actual liabilities owed and payment of claims by the trustee in the pending Chapter 7 cases.

### Count 3: Determination of Dischargeability

34.     The Court may determine the dischargeability of any debt pursuant to 11 U.S.C. §727, in accordance with 11 U.S.C. §523(a).

35.     James and Anita request that the Court determine the dischargeability of the taxes, fines or penalties relating to such taxes, or any additions to such taxes, which is determined by the Court to properly assessed against James and Anita pursuant to 11 U.S.C. §505(a).

### PRAYER

WHEREFORE, the Debtor requests that the Court make the tax determinations as requested herein pursuant to 11 U.S.C. §505(a); maintain the automatic stay of 11 U.S.C. §362(a) in full force and effect pending the tax determination and administration of the Chapter 7 cases; determine the dischargeability of the tax determination made pursuant to 11 U.S.C. §505(a); and grant such other relief as is just and equitable.

Respectfully submitted,

LAW OFFICE OF
C. ZAN PRITCHARD, PLLC


C. Zan Pritchard
TSB No. 24028084
2002 Saddlehorn Trail
Katy, TX 77494
Phone: 832.304.2248
Fax: 832.260.0677
zpritchard@zanpritchardlaw.com
**ATTORNEY FOR DEBTOR**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the above and foregoing pleading has been served by electronic notification or facsimile or regular mail by depositing same, postage prepaid, in the custody of the United States Postal Service, on 2nd day of January, 2015, to the parties as shown on the attached service list.

/s/   C. Zan Pritchard
C. Zan Pritchard

**Service List**
**13-35200**

Office of the U.S. Trustee
515 Rusk, Ste 3516
Houston, TX 77002

*Via CM/ECF*
Janet S. Casciato-Northrup
Chapter 7 Trustee

Internal Revenue Service
PO Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

Anita Ivison
20610 Palm Rain Ct
Katy, Tx 77449